Case number 25-1389, Ethan Ennes v. Presque Isle County, MI et al. Oral argument not to exceed 15 minutes per side. Sean Cabot for the appellant. You may proceed. Good morning. May it please the court. Sean Cabot on behalf of the appellant Ethan Ennes. At this time I would like to reserve three minutes. Very well. This case is probably not like most Fourth Amendment excessive force cases in that in this case we're not dealing with an adult or a citizen who has relatively normal cognitive abilities, but contrary in the present case we have a plaintiff, Ethan, who has a guardian who at the time of the incident was biologically 18 years of age but had a very low IQ. The record indicates was functioning at about a seven-year-old level about five years before the incidents at issue. His various diagnoses include mooted disorders, cerebral palsy, legal blindness in his left eye. He was in various IEPs. He was severely and multiply impaired and he had continuously received special education services since the age of seven. I mean, we are familiar with his background in that respect. What seems to matter is, you know, what what the officer confronted that day in the situation and maybe, you know, some things that had preceded it. So maybe we should. Yeah, I think and the reason why I mentioned, you know, the background is because the law is clear that those mental deficiencies, those physical problems have to go into the force analysis that the officer uses. And we know that the record, given the record, defendant Schmulte had been the school resource officer for years. He testified he was very well aware of his limitations, both physical and mental. In fact, in 2019, Mr. Schmulte had been involved in an encounter with Ethan and a teacher where he tried to charge Ethan with assault and battery and ultimately that was dismissed. And the prosecutor said because of his physical and mental deficiencies, there'd be no problem at all. I mean, we're familiar with the facts. Right. Be sure of that. So we have, I think the problem is that the lower court's opinion in order, from the way I read it, ignores basic summary judgment principles. I know in some of the hearings. Mr. Court judges usually don't just ignore Rule 56. But I mean, you know, I mean, that's a bit of overstatement. Well, I think in this one, the lower court did not draw all reasonable inferences in favor of the plaintiff. In fact, it's curious that in the opinion itself, the court would take up a whole page and it was page ID 4047 of showing the injuries that was alleged to have been given to the defendant, but nothing about all the bruising, all the damages and injuries that was done to Mr. Ennis. And so I think that goes into, I think, the court's kind of over-glossing of the facts in a light most favorable to the non-moving party here, which was the plaintiff. You know, we start with the fact of when he comes into the classroom. You know, he wasn't, defendant Schmulte was not in the classroom when any of the interactions come. He gets a phone call that we need help in the classroom. And so the only thing he knows that's happened when he gets there is he sees the children outside the classroom. He doesn't know of anything that goes on. The plaintiff testifies that the first thing that happens is that he throws a pencil box, a plastic student pencil box. I mean, I think that elides a lot of information that seems undisputed that is relevant to whether the officer was excessive in his response. I mean, he's called in and he sees a situation where, correct me if I'm wrong, because that's kind of the point of all this. Ethan has his fists raised toward a teacher. There's flip tables and, you know, it looks like some kind of mayhem has been going on there. And then the officer says something to him and then he has fists raised advancing toward the officer. I mean, I think that is common ground in this case. Well, according to the plaintiff, the first thing that he doesn't say that he had fists raised, the first thing the plaintiff says is when Schmulte enters that classroom is that he does throw a plastic pencil box at him. So, I mean, that's his version of the facts. But he doesn't deny he had his fists raised, right? I don't believe he was asked. I mean, Schmulte says that, but I don't think the plaintiff ever said that he had fists raised. It was undisputed, correct? There is no dispute. I don't want to say that. I would say he wasn't asked that, but I would say the first – Okay, but he could put in a declaration that says the only thing that happened was I threw a pencil box. I didn't raise my fist or something, and it wouldn't be a sham affidavit, right? Because he wasn't asked it. I mean, if you're going to litigate summary judgment, that's what you do, right? Well, potentially, but in this case, he says – Or you don't, and it's undisputed. That's how it works. Yeah, and there's nothing in these depositions from his mother or grandparents where he told them anything that would dispute whether he had his fists raised or not. Not that aspect, no. Okay. But I would say even if the fists were raised at best, that would be passive resistance. You know, because he does say the beginning of the encounter is not fists raised. It's not running at him. He says the beginning of this encounter when Schmoltz enters that classroom is, yeah, I threw a plastic pencil box at him. And I think what's important is that when that occurs and the plaintiff identifies at that point is when he's immediately taken to the ground. What about the advancing towards the officer? What's in the record about – is there any dispute that he was advancing towards the officer? Again, he doesn't say he advanced. He said when he came in, he threw the box. And so from the plaintiff's perspective, that's what he did. Again, the other depositions from the mother or grandmother don't support – you don't have anything from those depositions saying he was not advancing. Correct. They weren't there. Well, I mean, so it's just – I would like your response to the following. We have a scenario where the officer comes in, as I described, flip tables. He's got his fist raised at a teacher. Then he's advancing on the officer himself. He's got his fist raised. Now the officer decides to subdue him and basically restrain him. And then a fight starts and all this stuff happens. What case would make clear to the officer at that point that I can't try to subdue him physically? That would be the key moment here is when the officer moves to subdue him physically. And what case tells him he can't do that for purposes of qualified immunity? Well, first of all, I would dispute that because the plaintiff says he threw the box and that's immediately when he's taken to the ground. His head is smashed on the ground. He's kicked and hit. I think you're eliding facts that we're probably not going to elide, all right, which are that he's advancing toward the officer with his facts raised. That's what the district court said. The record – your client chose not to dispute that. So if you take that as part of the landscape here, what case tells the officers that they would violate the constitution for this officer if Schmolt chooses to subdue him physically, restrain him physically? Well, I think the Martin v. City of Broadview Heights case, 2013, dealt with a 19-year-old mentally unstable person, broke into this apartment. The officer falls on the plaintiff. He tries to push the plaintiff up. He bites one of the officers. In fact, there the Sixth Circuit said that, you know, these hand and body strikes, the body weight, the neck and chin restraints, the torso locks were all examples of excessive force. And I think what's important here, too, is that I asked – I mean, if you look at the pictures, there's definitely choke marks. I asked defendant Schmolt, was there any reason – okay, he's the reasonable officer on the scene. He's there. He's interacting. Was there any reason to put your hand around his neck? He says no. I asked him, you know, you can see on the photographs, and the plaintiff testifies, he was kicked in the ribs and in the back. You can see in one of the photographs there is a definitely boot mark on his side and back and ribs. I said, was there any reason to kick him? Officer Schmolt says no. And to even do so would be unreasonable. Is this – I mean, this sounds frankly like lawyer testimony, you know, as to forensic evidence as opposed to, I don't know, something else. I mean, is it – I think they dispute your interpretation of the photographs. I mean, well, I don't know. Is this just your opinion, or whose opinion are we talking about? Well, I mean, I think this is an opinion. This is what the evidence shows and what a jury should be permitted to see and what they make of those photographs. I mean, one could see handprint, one might not see it. Our client, Dan Moran, testified, you know, it was finger marks, and he actually told – Ethan told him he was choked. Ethan testified he was choked. Well, I mean, the district court excluded that as hearsay, right? I mean, that's his grandfather opining. Well, I would argue as an excited utterance what the district court did include as hearsay is all these allegations that he was threatened by Mr. Moran. I mean, that was hearsay, and even Defendant Schmolt admitted in his testimony, he said, look, I've had interactions with Mr. Moran. I've never been threatened by him, you know. And I say I have 30 seconds, but I do want to, you know, point out the handcuffing claim because I think the district court totally got that wrong. There's obviously three parts to a handcuffing claim. The court did see that elements one and three were met, but that the officer ignored the complaints of the overly tight handcuffs. I think what the district court completely ignored is that that complaint was made at the school, in the parking lot, at the police car, before that car ever left the parking lot and before they were ever on the road. I see my time is at night. Okay, Mr. Cabot. Thank you. You'll have your rebuttal. We're going to hear from Mr. Berger. Good morning, Your Honors. Michael Berger on behalf of the defendant appellees. As you know, we have six particular claims here. The excessive force claim, the handcuffing claim, the false arrest claim, assault and battery, gross negligence, and failure to train claim. I know that we just spent a lot of time talking about the excessive force claim, and I think the court is very familiar with the facts from what I can tell. So I just want to rebut some issues. The one thing that I do want to do, I should have raised this case in my briefing, is the Barnes versus Felix case that came out last summer. I mean, it's not fair to spring that on Mr. Cabot here. That's fair.  The reason I wanted to bring it up, and I really won't even need to, is we have to look at the totality of the circumstances of the situation. The totality of the circumstances, to me, begins with Deputy Schmoltz when he meets Ethan Ennis. We have the 2019 incident where Ethan is threatening to stab a teacher out there. That's the mind frame that Deputy Schmoltz is responding to this particular incident. He shows up as Your Honor's appointed. Do you think that's fair game to go back that far? The way I read totality of the circumstances, and I understand that's in flux, and we've got after Barnes, we've got the, I think it's Fagan from our court, which is a taser case that talks about that a little bit. My understanding of that is you kind of look at the entirety of what's going on. So you could, if the deputy knew about, you know, prior conduct, you know, why the students had been taken out of the room, or if the teacher, I'm not saying this is in the record, I'm just saying if they had said, hey, he's being really violent, you know, we need to get him under control or something like that, that would be part of the totality of the circumstance, not that five years ago, six years ago, or whatever, not at the time of this thing, but whatever, that he had been violent. Does that make sense? I understand your question. I would disagree with that conclusion, though, because I know if I were a police officer and I'm responding to a situation like this that's extremely similar and it's the same person, that would be in the back of my mind knowing, hey, I know that this particular person had tried to stab someone before. I need to be cognizant of that because that could happen again. It's kind of a habit and routine type of situation. So I think not in all situations it would bear on the totality of circumstances, but in this particular situation where it's nearly the same, it's absolutely something that would be in the back of my mind if I were a reasonable police officer. Once we get in there, as the court noticed, there's, you know, things everywhere. I think it's reasonable to see that there was a scuffle. But it wouldn't technically be, the Graham factors wouldn't technically encompass them, right? You're only looking at the plaintiff's conduct with respect to the relevant incident, right, or what the plaintiff is accused of doing at the time that the officer is encountering him that day. Generally, the Graham factors are those three factors, but Graham also indicated that they're not exclusive. So I think in this particular case, it is something that would be relevant. Again, other cases it may not be. I have a question about the extent to which we can consider the testimony of the mother and the grandmother and the grandparents of what Ennis told them happened. I recognize it's hearsay, but at summary judgment, I mean, can't we rely on some hearsay at summary judgment if it's not objected to? And I don't know that you actually objected to it at summary. I know you did motions in limine, but was there actually anything as part of the summary judgment record where you objected to exclusion of this testimony as hearsay? My recollection was that it is, but now you have me questioning my recollection. Yeah, I just saw you have your motions in limine, but they usually go to the trial, not to the summary judgment. Correct. Oh, I'm sorry, Your Honor. I mistakenly forgot to include the reply brief on my tablet. I may have it here. I thought we did, but in any event, I don't see any reason why we wouldn't be able to rely on those other motions in limine or why the court wouldn't be able to rely on those motions in limine since they were filed fairly simultaneously and were pending. So I think it creates a record. It was after your summary judgment brief was filed. Correct. It was after our summary judgment was filed. However, I think with it being pending, I think it would still create fair game for the court to at least consider that. But you think the MILs are preserving the objection for summary? I do believe. I would think so. I'm sorry. I just don't recall whether that was actually in there, and I don't want to waste my time on something if that's okay, Your Honor.   I understand. So, I mean, is your argument that if Schmoltz has reason to restrain Ethan physically at the moment of, you know, like as Ethan's approaching him, that whatever happens after that is fair game, basically? Like, I mean, you've heard Mr. Cavett's arguments about sort of, you know, some kind of marks on his neck, and he gets kicked, and all this stuff happens. I mean, is it just carte blanche from that point, or do you have to justify some of these more particular things? I think it's nuanced, and I think it does go throughout the steps of the encounter. I think it's kind of a sequence analysis. And when we're looking in this particular case, we have Ethan who is, you know, charging at Deputy Schmoltz with his fist up. That creates the reasonableness for Deputy Schmoltz to prevent him from doing that, bring him to the ground to try to subdue him. Then we're talking about, you know, what's going on with the neck area. We have Ethan who described that he was attempting to bite at Deputy Schmoltz. Deputy Schmoltz is trying to prevent that. Those testimonies are consistent. I think Ethan and the other evidence may use some different terms as to the choking. But Deputy Schmoltz explains, yes, I'm using my forearm to try to keep his hand away from me. I'm just wondering to what extent, so you're relying on things Ethan said in his deposition, which seemed to contradict a bit what his mother and grandparents say he told them happened. So I'm trying to figure out, can we rely upon, I know you've made this objection, but we also recognize that summary that you can, at least for affidavits, you can use those to defeat a summary judgment motion. You just think we need to exclude everything that Ennis said to his mother, allegedly said to his mother. I mean, my concern here is we've got a guy who's obviously mentally challenged, maybe doesn't always say what really happened. Maybe he makes things up. I don't know. Are we entitled to look at what he said to his relatives to try to say, maybe there's a dispute here, a fact. The jury needs to just look at this and see whether this guy's, whatever he's saying is what happened. Or is this something, you're saying, obviously you're saying it's something we can just cut off at this point and not let the jury decide. Assuming that there, if there weren't any hearsay objection, I think you have to rely on the evidence, the best light of Ethan is his own testimony. But he doesn't, he seemed to contradict himself within his own deposition. There were some contradictions. Yes, there were. However, when you're looking at what he's telling other people after the fact, that also creates some contradictions, which also is not under oath. So there's not that penalty of perjury. There's not that indicia of reliability. I think that a deposition testimony would be providing. And I think . . . And neither side tried to exclude his testimony as incompetent. Correct. Correct. But I think in viewing the facts in the light most favorable to him, we're looking at the way he described it, the way Deputy Schmulte described it, and trying to give Ethan the benefit of the doubt in that situation. Because those are the two people personally involved in the situation. How about the handcuffing claim? I mean, Mr. Cabot makes the point that, according to Ethan himself, he started complaining in the parking lot before Mr. Moran is shadowing him or whatever. So what's your response to that argument? I believe that that's a misreading of the transcript. When we're looking at page 764, page ID, and that's ECF 25-7, the question itself is, when you, at any time after you were handcuffed, did you say, ouch, because the handcuffs were too tight? That's a very vague and open-ended question. So that's at any time. That's not, was it prior to being in the vehicle? Well, what's the answer? And Ethan, of course, says yes. He, of course, says, yes, I made the complaint. But what we have from Sergeant Rabeau's testimony, it melds with what Ethan just said, and it's this complaint occurs inside the police vehicle. And I believe it's at 767, my colleague, Miss Battersby, had actually established that, through Ethan's testimony, that he made the complaint in the vehicle. So once they're in the vehicle together, we know that Mr. Moran is already there. We know that Deputy Schmultz. In the parking lot? Correct. Correct. Because if you remember, Nana ends up going to pick him up. And so he gets there. I mean, it just seems odd. I would think they come out, the grandmother's there.  The grandfather's not there, right? Correct. Schmultz's not going to hang around until the grandfather shows up. Correct. Right? And meanwhile, he's going to put Ethan in the vehicle. Correct, he's putting Ethan in the vehicle. So why isn't there a period of time where Ethan's in the vehicle, he's got the handcuffs on, and Moran has not yet arrived? Nana has had, if I recall correctly, Nana ends up saying, I'm going to go get Dan. So at that point, Deputy Schmultz was on notice. She's getting him. Okay, but he's not there. So, I mean, my question is, isn't it clear there's a period of time, like I just described? He's cuffed, Moran's not there. Isn't that clear? That is clear, but I don't believe the record is clear that that's exactly when Ethan had made the complaint. My understanding of the record, based off of that, is that Ethan makes the complaint later while the driving is actually occurring. Because the driving is actually occurring, and we know that Mr. Moran is following, that's when the concerns, the safety concerns pop in, specifically with Mr. Moran, based on his reputation in the community, based on what Deputy Schmultz had heard that he wanted to do to him after the 2019 incident. And, of course, we have, you know, I would be concerned about, you know, whether Ethan may go into a tizzy again if I were to stop and try to hold him off. Would he have to remove the cuffs to make them looser, or could he do that while keeping the cuffs on? I'm not aware of a way that he could have been able to loosen it without taking the cuffs off. And I don't think that was established in the record. What do we do with the fact that it's not established? I think you have to assume that, unless there's direct evidence showing that it could have been loosened, you have to assume that the evidence is not there. This is my own curiosity. Is this up around Indian River, or where is this up? I don't know where Indian River is. Where's the school? Oh, the school is, it's kind of like right in the middle of the county, if I recall correctly. Which county? Presque Hill. Really? Yeah. Okay. All right, it's just my curiosity. Yeah, no, that's fine. So given the situation that Deputy Schmulte was all alone, given that the complaint happens in the vehicle as they're going, I think it's reasonable under the circumstances to wait until he gets to the Sheriff's Department. At the very least, there is no case law that would definitively place him on notice that what he was doing was unreasonable, entitling him to qualified immunity. You've read my, I know you've read my argument as to Element 3, the injuries. I don't think under these circumstances, the pulling, the fight, just some bruising, or not some bruising, some swelling and some red marks is really sufficient to establish a handcuffing claim. I think that that should be distinguished from other cases that have dealt with compliant individuals. So I think the district court erred on that. I think you could reverse on that basis. And I apologize, going back to the excessive force claim, I don't, Plaintiff's counsel, Mr. Cabot brought up the Martin case. I don't think that is helpful at all for QI analysis because it is a deadly force case. What a force case? Deadly force case. The plaintiff died or the decedent died. That's the other case that Mr. Cabot mentioned. Correct. Correct. I think the Rowell case, which is the case that we cited with the individual who was kind of going through a mental situation, threatening the police officers and ended up getting tased, is more on point and would demonstrate that Deputy Schmoltz is entitled to qualified immunity in this case. I see you have four seconds. So if anyone has any other questions, happy to answer. I guess not. All right. Well, thank you for your time. Okay. Thank you. So I will hop into the handcuffing issue since that's kind of the last one we talked about. I'm going to cite from page record 760. So we're going to take it in two parts. Number one, there is record evidence that says he complained about the tightness of the handcuffs at the car in the parking lot. Page ID 760. Question. And you Deputy Schmoltz handcuff. I'm sorry. And you think those were from the handcuffs? Yeah. And you Deputy Schmoltz handcuffs. Yeah. Did the handcuffs hurt you? Oh, yeah. When did they start to hurt you? As I got in the cop car, when you got in the cop car, they started to hurt you. Yeah. Yeah. Did you tell Schmoltz that they hurt? Yeah. That's on page 760. 760 EC. I'm sorry. Okay. Record 25 seven. So clearly there, it's at the parking lot. Only Nana's there. Grandpa's not there. None of that's there. Now, even if we were to assume that this happened at some later point on the ride to the jail, I believe Deputy Schmoltz said it was an approximate 25 minute ride during his deposition. There there's some, there there's some interesting factual opposites in there because Schmoltz testified under oath, Ethan never complained. And that's in the record. I, I deposed Darren Rabot, who is the jail officer and his kind of superior command. He said, yeah, I got a call from, from Schmoltz. He said that Ethan complained, but that he didn't, you know, didn't want to stop. That was Rabot. So the other part of it, let's assume that we discard, which we can't, but let's assume that we just discard the parking lot complaint and just focus on the complaint on the ride. In the record,  I asked defendant Schmoltz and he admitted in his own testimony that he could have requested a second unit to come so he could have checked on it. And so my concern with the district court, obviously the decision was wrong on the handcuffing complaint, but they, the district court kind of put in a kind of a safety measure added element to that, that doesn't exist. And even if we were to add the safety element that does not exist in any case on the circuit, Schmoltz undermines that and said, look, I could have had a second unit come, unit could have come. I wouldn't have had to deal with the Moran issue, could have checked the cuffs. What case law would you point to, to defeat qualified immunity on the handcuffing claim in particular, based on these facts? I mean, you know, well, I mean, you know, the, the Baines versus Cleland case. I mean, I think this case doesn't even deal with the qualified immunity sense because the elements are all met. I mean, he, he complained, the officer didn't check it and there was injuries. I mean, that's been long established for forever. You're just saying there's a violation. There's gotta be a case that would make clear to the officer that in these circumstances, not withstanding the guy who's following you, who threatened to kill you, et cetera, you, you have to stop and maybe take the cuffs off for. Right. At least the Baines versus Cleland case there, they talked about, you know, the second element. Okay.   And I see my time is. All right. All right. Mr. Cabot, thank you for your arguments. Thank you to be submitted.